UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
DONALD GIBSON,

                            Plaintiff,                     **REPORT AND**
                                                   **RECOMMENDATION**

              -against-                         20-CV-4421 (DG) (TAM)

POLICE OFFICER TERIQ C. GRANT and
DETECTIVE RYAN OLSEN,

                            Defendants.
----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       This case raises questions at the intersection of the Fourth Amendment, New York's automobile presumption, and New York's complex weapons laws, which can lead to a multiplicity of charges based on the same underlying criminal conduct. The core question, ultimately, is whether Defendants violated Plaintiff's constitutional rights by arresting and charging him on the basis of an assault rifle found in the trunk of a vehicle in which he was traveling with four other men. When officers stopped the car, they discovered that three of the men were armed with handguns on their persons; the men stated the handguns were registered. The driver of the car also stated that he had a registered assault rifle in the trunk, which was then found, together with a loaded high-capacity magazine. Confronted with these facts, the New York City police officers arrested all of the men and ultimately charged Plaintiff with many weapons and parole violation charges, including two counts of possession of a loaded weapon.

       Defendants' motion for summary judgment is presently before the Court. Notwithstanding some lack of clarity in the arguments advanced by the City of New York (the "City") on behalf of the officers, the Court ultimately recommends granting summary judgment. The Court, however, cautions the police and the prosecutors in

New York City that the approach taken by law enforcement in this case must be carefully evaluated. Notwithstanding that all of the handguns in the car appear to have been found on the person of their registered owners, the City argues that the police had probable cause to arrest and initiate prosecution against Plaintiff for those handguns on a constructive possession theory.[1] Against the backdrop of New York's automobile presumption, and in light of the changing gun laws, this is a risky strategy that could result in a violation of individual constitutional rights. More concretely, the arrest of all individuals in a vehicle on weapons charges on the basis of constructive possession, when the officers on the scene have reason to believe that certain of the weapons are owned by, and registered to, specific persons in the car — facts which may negate probable cause that a crime is afoot — may risk running afoul of constitutional rights recognized by the Supreme Court.[2]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On September 16, 2020, Plaintiff Donald Gibson ("Gibson") initiated this action against Police Officer Teriq C. Grant, Police Officer John Doe ("Officer Doe"), and Kings

---

[1] As discussed below at length, notwithstanding the City's arguments that the discovery of the handguns could have been sufficient to provide probable cause to arrest and charge Plaintiff, the criminal court records for Plaintiff indicate his charges were based on the revelation of the assault rifle.

[2] See *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8–11 (2022) (concluding that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home" and striking down New York's law that required a demonstration of special need for a public-carry license).

[3] The facts included throughout this report and recommendation are taken primarily from the assertions set forth in Defendants' Rule 56.1 statement, Plaintiff's Rule 56.1 statement, and the record on summary judgment. (*See* Defs.' 56.1, ECF No. 42; Pl.'s 56.1, ECF No. 48.)

Local Civil Rule 56.1 of the Eastern District of New York ("Rule 56.1") "requires a party moving for summary judgment to submit a separate, short and concise statement of the

County District Attorney John Doe ("ADA Doe"). (*See* Compl., ECF No. 1.) On June 25, 2021, Plaintiff's claim against ADA Doe was dismissed, and on October 12, 2021, the City identified Police Officer John Doe as Detective Ryan Olsen. (Order of Partial Dismissal, ECF No. 5; Letter Pursuant to *Valentin* Order, ECF No. 12.)

Gibson functionally asserts false arrest and malicious prosecution claims under 42 U.S.C. § 1983 ("§ 1983") and New York state law, arising out of an arrest that occurred on October 1, 2017.[4] (*See* Compl., ECF No. 1, at ECF pp. 35–36 (stating "Plaintiff was unjustly arrested and incarcerated," "[the officers] willfully detained Plaintiff against his 4th Amendment rights," and "[t]he District Attorney (ADA) John Doe neglected his\her duty to dismiss charges against Plaintiff violating Plaintiffs [sic] 6th Amendment rights Due Process").) The gravamen of Plaintiff's claims is that Defendants lacked probable cause to arrest and prosecute him. (*See id.* at 5–6.) Presently before this Court is Defendants' motion for summary judgment, which the Honorable

---

allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried." *Rekha v. United States*, No. 15-CV-7271 (RRM) (LB), 2017 WL 3891647, at *3 n.2 (E.D.N.Y. Aug. 3, 2017) (quotation marks omitted), *report and recommendation adopted*, 2017 WL 3887875 (E.D.N.Y. Sept. 5, 2017); *see also* Local Rule 56.1(a). The party opposing a motion for summary judgment is also required to "include a correspondingly numbered paragraph responding to each numbered paragraph of the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b).

Although Plaintiff opposed Defendants' motion, Plaintiff did not file a Rule 56.1 statement specifically contesting the facts in Defendants' Rule 56.1 statement until November 16, 2023, after the Court had ordered Plaintiff to do so. (*See* Mem. in Opp'n, ECF No. 44; Oct. 17, 2023 ECF Order to Show Cause; Pl.'s 56.1, ECF No. 48.) In light of the reasons listed in Plaintiff's letter showing cause for his failure to timely file his Rule 56.1 statement, the Court declines to decide summary judgment on the basis of Defendants' undisputed facts alone. (*See* Resp. to Order to Show Cause, ECF No. 47.)

[4] Although Plaintiff did not specifically allege these claims, the Court liberally interprets the alleged injuries and relief sought to constitute claims of false arrest and malicious prosecution in light of Plaintiff's *pro se* status. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Diane Gujarati referred to the undersigned magistrate judge for a report and recommendation. (*See* Notice of Mot., ECF No. 39; June 1, 2023 ECF Order Referring Mot.) For the following reasons, the Court respectfully recommends granting Defendants' motion for summary judgment.

## I. Factual Background

On October 1, 2017, while Plaintiff was on parole for a prior offense,[5] Plaintiff, Lionel Williams ("Williams"), Alonzo Jones ("Jones"), and Tam Mai ("Mai") joined Carlton Anthony ("Anthony") in his rental car ("the Car") as Anthony drove Plaintiff to his job. (Defs.' 56.1, ECF No. 42, ¶¶ 4–5.) Anthony and Jones sat in the front; Plaintiff sat behind the front passenger; Williams sat in the middle seat; and Mai sat behind the driver.[6] (*Id.* ¶ 6; Pl.'s 56.1, ECF No. 48, ¶ 6.) At approximately 9:47 p.m., after the sun had set, Defendants Grant and Olsen pulled the Car over after "observ[ing] the Car driving . . . with neither of its taillights illuminated." (Defs.' 56.1, ECF No. 42, ¶¶ 7–8; *see* Compl., ECF No. 1, at ECF p. 4.) After asking Anthony for his license and registration, Defendant Grant ordered Anthony to step out of the vehicle and asked "if he had anything on him." (Defs.' 56.1, ECF No. 42, ¶¶ 10–12; Pl.'s 56.1, ECF No. 48, ¶¶ 10–12.) After Anthony confirmed that he had a registered handgun, Defendants confiscated the handgun and asked the other passengers to exit the Car "one by one, ask[ing] each if

---

[5] On November 18, 2013, Plaintiff was sentenced on one charge of attempted criminal possession of a weapon in the third degree with a previous conviction pursuant to Section 265.02(1) of the New York Penal Law ("N.Y. Penal Law"). (Crim. Rec., ECF No. 41-2, at ECF pp. 6–7.) On April 7, 2016, Plaintiff was conditionally released on parole. (*Id.* at ECF p. 7.)

[6] Notably, although Plaintiff and Defendants now agree on Plaintiff's position in the Car, the criminal complaint stated that Plaintiff was seated in the rear middle passenger seat. (Defs.' 56.1, ECF No. 42, ¶¶ 4–5; Pl. 56.1, ECF No. 48, ¶ 6; Crim. Compl., ECF No. 41-7, at ECF p. 3.) However, the constructive possession arguments advanced by the City are the same regardless of where Plaintiff was seated.

they had anything on them, and search[ing] each of them." (Defs.' 56.1, ECF No. 42, ¶ 14; *see* Pl.'s 56.1, ECF No. 48, ¶ 14.) Officers confiscated registered handguns from Mai and Williams and crack cocaine from Jones, and placed them each in handcuffs. (Defs.' 56.1, ECF No. 42, ¶¶ 15–17; *see* Pl.'s 56.1, ECF No. 48, ¶ 15.) Plaintiff was also placed in handcuffs. (Defs.' 56.1, ECF No. 42, ¶ 18; Pl.'s 56.1, ECF No. 48, ¶ 18.) After Defendant Grant asked Anthony "if there was anything else in the Car that he should know about," Anthony replied that there was a registered assault rifle in the trunk. (Defs.' 56.1, ECF No. 42, ¶¶ 19–20; Pl.'s 56.1, ECF No. 48, ¶¶ 19–20.) Plaintiff was subsequently arrested for criminal possession of a weapon in the second degree under N.Y. Penal Law Section 265.03(1)(b), on the basis that he was "found in possession [of the] Stag Arms assault rife [sic]." (Arrest Rep., ECF No. 41-6 (capitalization modified); *see* Defs.' 56.1, ECF No. 42, ¶¶ 21–22; Pl.'s 56.1, ECF No. 48, ¶ 22.)

The next day, on October 2, 2017, Defendant Grant signed a criminal complaint that charged Plaintiff with criminal possession of a weapon in the second degree in violation of N.Y. Penal Law Sections 265.03(1)(b) and (3); criminal possession of a weapon in the third degree under Sections 265.02(1), (7), and (8); criminal possession of a firearm under Section 265.01-b(1); criminal possession of a weapon in the fourth degree under Section 265.01(4); possession of an unloaded rifle or shotgun under New York City Administrative Code ("N.Y.C. Admin. Code") Section 10-131(H)(2); possession of rifle ammunition under Section 10-131(I)(5); and possession of an ammunition feeding device under Section 10-131(I)(6). (Crim. Compl., ECF No. 41-7, at ECF p. 2.) Following the list of charges and brief textual descriptions of them, the factual allegations included in the criminal complaint were as follows:

> Deponent states that, at the above time and place, which is a public street, deponent observed the Defendant sitting in the rear middle passenger seat of [the Car], which apprehended other Anthony . . . was driving, with

5

> apprehended other . . . Jones . . . sitting in the front passenger seat, apprehended other . . . Mai . . . sitting in the rear driver side seat and apprehended other . . . Williams . . . sitting in the rear passenger side seat of the above-mentioned vehicle.
>
> Deponent further states that, at the above time and place, deponent recovered a Stag Arms assault riffle [sic] which rifle has the ability to accept a detachable magazine and which has a folding or telescoping stock, and recovered a cartridge containing 12 bullets from inside the trunk of the above-mentioned vehicle in which the defendant was a passenger.
>
> Deponent is further informed by the official records of the New York State Division of Criminal Justice Services that on September 3, 2013 in the State of New York, County of Kings, under case number 02547-2013, the Defendant was convicted of Penal Law Section 265.02(1) attempted criminal possession of a weapon in the 3rd degree: previous conviction.

(*Id.* at ECF p. 3 (capitalization modified).) Defendant Olsen did not sign the complaint.

(*Id.*)

At a preliminary hearing on October 19, 2017 (the "Preliminary Hearing"), regarding the parole violation charges, the Probation Officer stated that Plaintiff was charged with violating the conditions of his release "in that on or about 10-1-2017 at approximately 2147 while in the vicinity of Crescent Street and Sutter Avenue, Brooklyn, New York he possessed an assault rifle, serial number S027884, a weapon, to wit, an assault rifle bearing." (Prelim. Hearing Tr., ECF No. 41-8, at 4:19–23.) Defendant Grant testified about the stop of the Car and the recovery of the weapons from the other passengers, stating that while Plaintiff did not take responsibility for any of the guns, the other passengers did. (*Id.* at 6:21–9:16.) Defendant Olsen did not testify at the Preliminary Hearing. (*See generally id.*) The hearing officer dismissed the parole violation charges, and on November 2, 2017, all charges in connection with Plaintiff's October 1, 2017 arrest were also dismissed. (*Id.* at 9:21–22; Certificate of Disposition, ECF No. 41-9, at ECF p. 2.)

## II. Procedural History

As stated above, Plaintiff filed suit against Defendant Grant, Officer Doe, and ADA Doe on September 16, 2020. (*See* Compl., ECF No. 1.) On the same day, Plaintiff filed a motion for leave to proceed *in forma pauperis*, which the Honorable Roslynn R. Mauskopf granted on June 25, 2021. (*See* Mot. for Leave, ECF No. 2; Order of Partial Dismissal, ECF No. 5.) In that same order, Judge Mauskopf dismissed the claim against ADA Doe. (*See* Order of Partial Dismissal, ECF No. 5.) On July 27, 2021, counsel for the City filed a motion requesting an extension of time for Defendant Grant to respond to the complaint and to identify Officer Doe. (*See* Mot. for Extension of Time, ECF No. 8.) The next day, on July 28, 2021, the Court granted the motion and ordered Defendant Grant to respond to the complaint by September 28, 2021, and directed Defendant Grant to ascertain the identity of Officer Doe by October 5, 2021. (July 28, 2021 ECF Order.) After a second extension, on October 12, 2021, the City identified Officer Doe as Detective Ryan Olsen, and on November 22, 2021, both Defendants were served with supplemental summons. (Sept. 30, 2021 ECF Order; Letter Pursuant to *Valentin* Order, ECF No. 12; Process Receipt & Return, ECF Nos. 15–16.) On December 21, 2021, Defendants filed an answer. (Answer, ECF No. 18.) Following discovery, on May 30, 2023, Defendants filed a fully briefed motion for summary judgment. (*See* Notice of Mot., ECF No. 39; Aff. in Supp., ECF No. 41; Defs.' 56.1, ECF No. 42; Mem. in Supp., ECF No. 43; Mem. in Opp'n, ECF No. 44; Reply in Supp., ECF No. 45.)

Judge Gujarati thereafter referred the motion to the undersigned magistrate judge for a report and recommendation. (June 1, 2023 Order Referring Mot.) On October 17, 2023, the Court directed Plaintiff to show good cause for why he had failed to file a Rule 56.1 statement and why "the Court should not consider the facts in the Defendants' Rule 56.1 statement undisputed for the purposes of the motion for

summary judgment." (Oct. 17, 2023 ECF Order to Show Cause.) On November 16, 2023, Plaintiff filed a Rule 56.1 statement and a statement showing good cause. (Show of Good Cause, ECF No. 47; Pl.'s 56.1, ECF No. 48.)

The Court held oral argument regarding the summary judgment motion on January 10, 2024, having directed the parties to be prepared to discuss the recent grant of a petition for certiorari in a Supreme Court case addressing malicious prosecution, and the factual support in the summary judgment record for each of the charges included in the arrest report and criminal complaint. (*See* Jan. 8, 2024 ECF Order (quoting *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) ("Although probable cause to prosecute is a complete defense to a claim of malicious prosecution, such probable cause must be shown as to each crime charged in the underlying criminal action." (citations omitted)); Jan. 10, 2024 ECF Min. Entry & Order.) Following oral argument, Defendants filed a letter in further support of their summary judgment motion. (Defs.' Suppl. Ltr., ECF No. 50.)

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The

Court must "view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

The movant "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). However, summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c); *see also Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When considering whether a movant is entitled to summary judgment, the Court cannot weigh the evidence or make credibility determinations to decide the truth of the matter, but instead must determine "whether there is a genuine issue for trial." *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (citing *Anderson*, 477 U.S. at 249, 255). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020).

Finally, it is well established that "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court is therefore obligated to interpret the submissions of a *pro se* litigant "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted); *Vartholomeou v. City of New York*, No. 15-CV-4996 (PKC) (LB), 2018 WL 11466965, at *4 (E.D.N.Y. Jan. 2, 2018) (applying the standard set forth in *Triestman* in the summary judgment context); *see also Jorgensen v. Epic/Sony Recs.*, No. 00-CV-9181 (JFK), 2002 WL 31119377, at *2 (S.D.N.Y. Sept. 24, 2002) (applying the lenient standard but noting that "the Court's application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"), *aff'd in part, vacated in part*, 351 F.3d 46 (2d Cir. 2003).

## II. Analysis

As mentioned *supra*, Plaintiff functionally brings false arrest and malicious prosecution claims under § 1983 and New York state law. (*See* Compl., ECF No. 1, at ECF pp. 35–36.) Plaintiff specifically alleges that he was "unjustly arrested and incarcerated," "detained . . . against his 4th Amendment rights of Search and Seizure," and that, because ADA Doe "neglected his\her duty to dismiss charges against [him] violating [his] 6th Amendment rights [to] Due Process," Plaintiff "remained illegally imprisoned for 20 days from Oct. 1 to Oct. 20." (*Id.*)

Defendants argue that they are entitled to summary judgment on these claims because "no reasonable jury could find that defendants lacked probable cause to arrest and prosecute plaintiff." (*See* Mem. in Supp., ECF No. 43, at 1.) Specifically, they argue that they are "entitled to summary judgment on the grounds that (i) there was probable cause to arrest plaintiff; (ii) probable cause did not dissipate before or during plaintiff's prosecution; and (iii) defendants are entitled to qualified immunity." (*Id.*)

In response, Plaintiff filed a memorandum in opposition and a Rule 56.1 counterstatement. (Mem. in Opp'n, ECF No. 44; Pl.'s 56.1, ECF No. 48.) Plaintiff primarily argues that because he was not in possession of the handguns or assault rifle, Defendants did not have probable cause to arrest or prosecute him. (*See, e.g.*, Pl.'s 56.1, ECF No. 48, ¶ 20.) However, for the reasons discussed *infra*, this is not a case "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Accordingly, no genuine dispute of material fact exists and the Court respectfully recommends granting Defendants' motion for summary judgment.

In this case, the record demonstrates that Officer Grant was involved in Plaintiff's arrest and prosecution as (1) the arresting officer; (2) the affiant on the

11

criminal complaint; and (3) a testifying witness at a preliminary hearing on Plaintiff's parole violation charges, where he testified that Plaintiff "did not take any responsibility for any of the four guns, but the other passengers did." (Defs.' 56.1, ECF No. 42, ¶ 24; *see also id.* ¶¶ 8, 22–23.) Officer Olsen's role was more narrow — he was present at the time of the car stop and arrest, and ultimately filed the arrest report. (*Id.* at ¶ 8; Arrest Rep., ECF No. 41-6.)

### A. False Arrest

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest Plaintiff for criminal possession of a weapon. (Mem. in Supp., ECF No. 43, at 4.) The primary issues underlying this claim are (1) whether Defendants had reasonable suspicion to stop the Car and (2) whether Defendants had probable cause to arrest Plaintiff. *See United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Having carefully reviewed the summary judgment record, and drawing all reasonable inferences in Plaintiff's favor, the Court respectfully recommends granting summary judgment for Defendants on the false arrest claim. As discussed below, Defendants' actions at each stage of the car stop were reasonable, and, under New York's automobile presumption, Defendants had probable cause to arrest Plaintiff for criminal possession of a loaded firearm in the second degree on the basis of the assault rifle that was found in the trunk, which charge was the sole count listed in Plaintiff's initial arrest report. (Arrest Rep., ECF No. 41-6 (noting as to the details of the arrest that Plaintiff was "found in possession [of the] Stag Arms assault rife [sic]" (capitalization modified).)

1. *Whether Defendants Had Reasonable Suspicion to Stop the Car*

"The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of [a] vehicle . . . ." *United States v. Cortez*, 449 U.S.

411, 417 (1981). These stops are constitutional under the Fourth Amendment "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *Cortez*, 499 U.S. at 417–18). This Circuit has previously held that "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *Stewart*, 551 F.3d at 193; *see also United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) (upholding the constitutionality of a stop where a vehicle appeared to lack license plates in violation of the New York Vehicle and Traffic Law).

While the Fourth Amendment requires "some minimal level of objective justification" for making a stop, the level of suspicion required to satisfy the reasonable suspicion standard is "obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation marks omitted). Further, because the test is objective, not subjective, the critical question is "whether a reasonable officer would suspect unlawful activity under the totality of the circumstances." *United States v. Diaz*, 802 F.3d 234, 239 (2d Cir. 2015).

Here, the relevant inquiry begins with the question of whether there is a genuine dispute as to whether Defendants had a particularized and objective basis for stopping the Car. New York state law requires that every motor vehicle (except a motorcycle) display taillights from "one-half hour after sunset" until "one-half hour before sunrise." *See* N.Y. Veh. & Tr. L. § 376(1)(a) (requiring "lamps" to be "lighted" during the specified times). As stated *supra*, Defendants pulled over the Car at approximately 9:47 p.m., nearly three hours after the sun had set at 6:37 p.m., having "observed the Car driving . . . with neither of its taillights illuminated." (Defs.' 56.1, ECF No. 42, ¶¶ 7–8.) Given that unlit taillights at 9:47 p.m. would constitute a traffic violation and therefore satisfy

the Fourth Amendment reasonable suspicion standard, the narrow question is whether there is any evidence in the record to create a genuine dispute as to whether the Car's taillights were illuminated.

As to this issue, Plaintiff asserts that, from the rear seat, he could "clearly see the entire [d]ashboard of the vehicle and could view that the knob controlling the lights . . . was turned on indicating that all lights were on and working at the time the vehicle was stopped." (Mem. in Opp'n, ECF No. 44, at 2.)[7] However, this factual assertion fails to advance any evidence that conflicts with Defendants' observations that the exterior taillights were not illuminated at the time they observed the Car. (*Id*. at 1.) Plaintiff's assertion indicates that he observed indicators on the interior of the Car — not the taillights themselves — at the time the Car was stopped. (*Id*.) There is thus no evidence in the record to rebut the officers' stated basis for stopping the Car — that they observed that the taillights were not illuminated. (Defs.' 56.1, ECF No. 42, ¶ 8.) Simply stated, *both* assertions of fact could be true: an indicator light on the dashboard could have signaled that the taillights were illuminated, *and* it remains possible that the lights were not actually illuminated. Thus, Plaintiff has not adduced any meaningful evidence indicating that the taillights were lit at the time Defendants observed them; there is thus

---

[7] Plaintiff also notes small inconsistencies in the record relating to the precise description of the taillights; however, the Court finds that these assertions do not identify material disputes of fact. For example, Plaintiff distinguishes between the phrases "didn't have back lights" and "a broken tail light." (Compl., ECF No. 1, at 26; Compl., ECF No. 1, at 16.) These wording discrepancies are not evidence of a genuine dispute as to what the officers observed about the taillights. First, the inconsistencies Plaintiff notes are not relevant to the question of whether the taillights were illuminated or not. Rather, the different phrases describing the lights demonstrate a variety of ways to describe the same phenomenon: a lack of illuminated taillights. Whether the unlit lights were missing entirely, were broken, or were turned off is immaterial in determining whether there was a genuine dispute as to whether the officers perceived that the taillights were not illuminated.

no material dispute for trial as to whether Defendants had reasonable suspicion to stop the Car.

    2.   *Whether Defendants Had Probable Cause to Arrest Plaintiff*

       a.   <u>Legal Standards: False Arrest</u>

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Kee*, 12 F.4th at 158 (quotation marks and modification omitted). A plaintiff claiming false arrest under New York law must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quotation marks and alterations omitted). In other words, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." *Weyant*, 101 F.3d at 852. In the § 1983 context, "the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Id.* (quotation marks omitted); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

Generally, officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Like reasonable suspicion, the probable cause standard is objective; the critical question is "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006); *see also Kee*, 12 F.4th at

158 (observing that in assessing probable cause, courts may consider "only the facts 'available to the officer at the time of the arrest and immediately before it'") (quoting *Ashley*, 992 F.3d at 136); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("To ascertain the existence of probable cause, [courts] look at the facts as the officers knew them in light of the specific elements of each crime."). Although an arresting officer need not have proof of every element of a crime to establish probable cause, probable cause requires "more than bare suspicion," and certainly "more than suspicion of some generalized misconduct." *Gonzalez*, 728 F.3d at 155 (quotation marks omitted).

Notably, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Further, given that "probable cause is not a particularly demanding standard," "the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Harrison v. Incorporated Village of Freeport*, 498 F. Supp. 3d 378, 391 (E.D.N.Y. 2020) (quotation marks omitted).

   b.  Analysis

For the reasons set forth below, the Court finds that Defendants had reasonable suspicion or "probable cause for each of the actions they took over the course of the [stop]," which ultimately yielded the assault rifle for which they arrested Plaintiff. *United States v. Rivera*, 89 F. Supp. 3d 376, 388–89 (E.D.N.Y. 2015), *aff'd sub nom. United States v. Garrett*, No. 17-59, 2022 WL 2979588 (2d Cir. July 28, 2022). (*See* Arrest Rep., ECF No. 41-6.) As discussed below, the situation the officers confronted that night unfolded in stages: they discovered handguns, then drugs, then an assault rifle in the trunk. Under such circumstances, the Court must look to the officers' actions over the

16

course of the stop and here, each step the officers took was reasonable and supported the additional investigative steps that they took. *See Rivera*, 89 F. Supp. 3d at 388–89.

    i. <u>The Discovery of the Weapons</u>

  As set forth above, a handgun was confiscated from Anthony's person, and handguns were confiscated from both Mai and Williams; Plaintiff was seated next to Williams. (Defs.' 56.1, ECF No. 42, ¶¶ 6, 12, 15.) Indeed, Williams's handgun was located on his waistband. (*Id.* ¶ 16.) Thereafter, the officers found crack cocaine on Jones and he was placed in handcuffs. (*Id.* ¶ 17.) Following that discovery, Officer Grant asked Anthony if there was anything else in the car they should know about, in response to which Anthony informed the officers that there was a registered assault rifle in the trunk. (*Id.* ¶¶ 19–20.)

    ii. <u>Defendants' Arrest of Plaintiff</u>

  The arrest report here indicates that Plaintiff was arrested on a charge of criminal possession of a loaded firearm in the second degree, in violation of New York Penal Law Section 265.03(1)(b), which prohibits possession of a loaded firearm with intent to use it against another.[8] (*See* Arrest Rep., ECF No. 41-6.) The arrest report's details state that Plaintiff was "found in possession [of the] Stag Arms assault rife [sic] bearing serial #S027884." (*Id.* (capitalization modified).) Defendants argue that there was probable cause to arrest Plaintiff for possession of the assault rifle under the New York state law

---

[8] New York law expressly presumes "intent to use the same unlawfully against another" when an individual possesses a weapon. N.Y. Penal Law § 265.15(4).

automobile presumption (the "automobile presumption").[9] (Mem. in Supp., ECF No. 43, at 9.) The automobile presumption states:

> [t]he presence in any automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, except under the following circumstances: (a) if such weapon . . . is found upon the person of one of the occupants therein; (b) if such weapon . . . is found in an automobile which is being operated for hire by a duly licensed driver in the due, lawful, and proper pursuit of his or her trade, then such presumption shall not apply to the driver; or (c) if the weapon so found is a pistol or revolver and one of the occupants, not present under duress, has in [their] possession a valid license to have and carry concealed the same.

N.Y. Penal Law § 265.15(3). Defendants argue that none of the exceptions to the automobile presumption apply, positing that "the assault rifle was not on the person of any occupant of the Car, . . . Anthony was not hired in pursuit of a trade, . . . [and] the assault rifle was neither a pistol nor a revolver that was accompanied by a valid license." (Mem. in Supp., ECF No. 43, at 9.) Defendants accordingly contend that "there was presumptive probable cause for Officers Grant and Olsen to believe plaintiff and every other occupant of the Car possessed the assault rifle in its trunk." (*Id.*)

---

[9] In their memorandum in support of summary judgment, Defendants also advance various arguments to contend that there was probable cause to arrest and charge Plaintiff because he constructively possessed the handguns found in the Car. (Mem. in Supp., ECF No. 43, at 7–9.) Because the Officer Defendants here did not include charges related to the handguns in Plaintiff's arrest report, the Court need not reach the question of whether it would have been reasonable for the officers to make the decision to arrest Plaintiff on a constructive possession theory as to the handguns, notwithstanding that the other occupants of the vehicle had the handguns on their persons, claimed them, and represented that they were lawfully registered. (*See* Arrest Rep., ECF No. 41-6; Defs.' 56.1, ECF No. 42, ¶¶ 12, 15.) The Court also notes that a determination to arrest Plaintiff for the handguns would arguably have been in significant tension with New York's automobile presumption, which unequivocally *excludes* licensed handguns and handguns found on a vehicle's occupant from the general rule that "the presence in any automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time." N.Y. Penal Law § 265.15(3).

In response, after identifying some alleged phrasing inconsistencies in record, Plaintiff contends that: (1) Plaintiff was "not found to be in possession" of any firearm; (2) he had no knowledge of the assault rifle in the trunk; (3) other passengers took responsibility for all weapons; and (4) it was not clearly established that Plaintiff "exercised dominion or control over the weapons." (Mem. in Opp'n, ECF No. 44, at 3.) Plaintiff's first argument does not identify a genuine dispute because Defendants do not argue that he was in actual possession of the assault rifle; rather, the issue is whether the officers could have reasonably found probable cause to conclude that he was in constructive possession.[10]

Plaintiff's second and fourth arguments — regarding lack of knowledge and control of the assault rifle — similarly fail to raise any genuine dispute as to whether Defendants had a reasonable basis to believe that Plaintiff constructively possessed the assault rifle. *See Weyant*, 101 F.3d at 852 (stating summary judgment standard). In his opposition, Plaintiff asserts that he "had no knowledge of the handguns in the car and or the Assault Rifle in the trunk." (Mem. in Opp'n, ECF No. 44, at 3.) However, these

---

[10] The New York Penal Law defines "possess" as "to have physical possession or otherwise to exercise dominion or control over tangible property." § 10.00(8). Under New York law, a person maybe found guilty of criminal possession of a weapon even when not in physical possession of it. Under the constructive possession doctrine, a person may be found in possession of a weapon if there is proof that the individual "exercised 'dominion or control' over the [firearm] by a sufficient level of control over the area in which the [firearm] is found." *People v. McCoy*, 95 N.Y.S.3d 441, 445 (App. Div. 3d Dep't 2019) (quotation marks omitted); *see also People v. Kalabakas*, 124 N.Y.S.3d 448, 457 (App. Div. 3d Dep't 2020) (concluding that a defendant sitting directly behind a compartment that contained a loaded firearm constructively possessed the firearm because "the magnet that opened the hidden compartment was . . . easily accessible to the defendant"). Furthermore, constructive possession may be established through circumstantial evidence, and the individual's "access to the area where the firearm was discovered need not be exclusive in order to establish his or her constructive possession thereof." *People v. Bryant*, 161 N.Y.S.3d 399, 405 (App. Div. 3d Dep't 2021) (quotation marks omitted); *see also Kalabakas*, 124 N.Y.S.3d at 457; *People v. Watts*, 187 N.Y.S.3d 848, 852 (App. Div. 3d Dep't 2023).

arguments do not raise a genuine issue of material fact as to whether the officers had a reasonable basis to conclude that Plaintiff "exercised 'dominion and control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." *People v. Manini*, 79 N.Y.2d 561, 573 (1992); *see also McCoy*, 95 N.Y.S.3d at 445; *Weyant*, 101 F.3d at 852.

Indeed, by definition, for probable cause to exist, "only the probability of criminal conduct must be shown." *Quezada v. Bakraqi*, No. 15-CV-10105 (VEC) (BCM), 2017 WL 4286646, at *7 (S.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, 2017 WL 4296787 (S.D.N.Y. Sept. 26, 2017) (quotation marks omitted). In other words, assuming *arguendo* that Plaintiff's knowledge of the rifle was relevant to the issue of constructive possession, all that would matter is whether Defendants had probable cause to believe that Plaintiff knew of the contraband and exercised dominion and control over it — *not* whether Plaintiff *actually* knew of the contraband. Plaintiff has not adduced any evidence from which to conclude that there is a material dispute as to this issue. (*See* Mem. in Opp'n, ECF No. 44, at 3.)

Plaintiff's third argument — that other passengers took responsibility for the weapons, including the assault rifle — likewise fails to identify a genuine factual dispute. It is well established that exclusive possession is not required to find constructive possession. *See United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002). Accordingly, Plaintiff's arguments do not advance any material dispute as to the existence of probable cause, and, relatedly, whether any of the exceptions to the

automobile presumption applied such that Defendants could not have relied on it to presume possession of the assault rifle.[11]

For all of the reasons stated herein, the Court finds that Plaintiff has not demonstrated a genuine dispute as to the material facts underlying the events here — from Defendants' initial stop of the Car to their arrest of Plaintiff. In sum, the record demonstrates that Defendants had probable cause to arrest Plaintiff for constructive possession of the assault rifle. Accordingly, construing the record in the light most favorable to Plaintiff, the Court finds that no reasonable jury could find for Plaintiff on the false arrest claim and respectfully recommends granting Defendants' motion for summary judgment as to this claim.

## B. Malicious Prosecution

### 1. *Legal Standards: Malicious Prosecution*

To establish a claim of malicious prosecution under New York law, a plaintiff must prove the following elements: "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotation marks omitted); *see also Kee*, 12 F.4th at 161–62. In addition, "[f]or a malicious prosecution claim under Section 1983, a plaintiff also must

---

[11] The Court notes, however, that there is no evidence in the record to suggest that the assault rifle was physically loaded with ammunition at the time it was discovered. (*See* Defs.' 56.1, ECF No. 42.) As discussed *infra*, however, the definition of what constitutes a loaded firearm under New York law includes firearms found together with compatible ammunition. Moreover, as noted above, probable cause may be found "even where it is based on mistaken information[] so long as the arresting officer acted reasonably and in good faith." *Bernard*, 25 F.3d at 102.

demonstrate a sufficient post-arraignment liberty restraint." *Id*. at 162 (quotation marks omitted).[12]

The first element is satisfied by the filing of a criminal complaint, which, by definition, initiates a criminal proceeding. The second element, "the favorable termination element," is satisfied by a showing "that the criminal prosecution ended without a conviction"; the plaintiff need not show "that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022) (clarifying the favorable termination element in malicious prosecution claims brought under § 1983).

As to the third element, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello*, 612 F.3d at 161–62; *see also Kee*, 12 F.4th at 166. In general terms, "probable cause that arises at the time of an individual's arrest continues to support her prosecution unless it dissipates because the police discover new information showing the groundless nature of the charge." *Biton v. City of New York*, No. 21-23, 2022 WL 1448207, at *1 (2d Cir. May 9, 2022) (quotation marks omitted). In other words, if probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless and until it is undermined by an intervening fact that was later discovered. However, because "probable cause must be shown as to each crime charged in the underlying criminal action, . . . probable cause to prosecute should not be conflated with probable cause to arrest." *Kee*, 12 F.4th at 166. As to what courts may consider in evaluating probable cause in this context, the Second Circuit recently

---

[12] If Plaintiff were able to establish the other required elements of a malicious prosecution claim, there can be no serious dispute about his post-arraignment liberty restraint. In his complaint, Plaintiff alleges that he "remained illegally imprisoned for 20 days from Oct. 1 to Oct. 20" while the charges were pending. (Compl., ECF No. 1, at ECF p. 36.)

observed that "[f]or purposes of malicious prosecution, probable cause is assessed in light of the facts known or reasonably believed by the officers at the initiation of the prosecution." *Keyes v. City of New York*, No. 21-2406, 2023 WL 176956, at *4 (2d Cir. Jan. 13, 2023) (citing *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004)).

Regarding the fourth element, malice, a "lack of probable cause generally creates an inference of malice"; but where probable cause exists, "malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Manganiello*, 612 F.3d at 163 (citing *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)); *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996). In other words, malice need not be "actual spite or hatred"; malice "means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quotation marks omitted).

2. *Analysis*

Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim "because there was probable cause and no malice."[13] (Mem.

---

[13] While Defendant Grant signed the criminal complaint and testified at the Preliminary Hearing, Defendant Olsen did not, and Plaintiff fails to assert any factual allegations regarding Defendant Olsen's role in the prosecution that followed the initial arrest. (*See* Crim. Compl., ECF No. 41-7, at ECF p. 3; Defs.' 56.1, ECF No. 42, ¶ 23 (noting Grant signed the criminal complaint); Prelim. Hearing Tr., ECF No. 41-8, at 5:23–9:18 (transcribing Grant's testimony)); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 162 (E.D.N.Y. 2016) ("A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out or corroborating affidavits, or signing a felony complaint."). Accordingly, Defendant Olsen may not be found individually liable for malicious prosecution, and the Court respectfully recommends dismissal of the malicious prosecution claim as to Defendant Olsen. *See Grinols v. Beers*, 532 F. Supp. 3d 95, 106 (W.D.N.Y. 2021) ("For a defendant to be individually liable in an action under § 1983, the plaintiff must show that the defendant was personally involved in the alleged deprivation.").

in Supp., ECF No. 43, at 10 (capitalization modified).) As set forth above, Plaintiff's initial arrest in this case was for a sole charge related to the assault rifle. (Arrest Rep., ECF No. 41-6.) The criminal complaint, however, included numerous additional charges and parole violations. (Crim. Compl., ECF No. 41-7.) As discussed above, during the officers' investigatory stop, the officers learned that three of the occupants of the vehicle had registered handguns on their person. (*See* Defs.' 56.1, ECF No. 42, ¶¶ 12–16.) On summary judgment, the City argues that the handguns could have also provided probable cause to prosecute Plaintiff on the weapons charges alleged in the criminal complaint.

As set forth above, however, the factual portion of the criminal complaint summarily notes the other men in the Car and describes the revelation of the rifle as the basis for Plaintiff's charges. (Crim. Compl., ECF No. 41-7.) Against that factual backdrop, the criminal complaint included, as the two most serious charges, two theories of criminal possession of a weapon in the second degree — one charge under § 265.03(1)(b), which prohibits possession of a loaded firearm with intent to use it against another, and one charge under § 265.03(3), which proscribes possession of a loaded firearm. (Crim. Compl., ECF No. 41-7); N.Y. Penal Law § 265.03(1)(b), (3). The first charge, under § 265.03(1)(b), was the same charge Officer Grant originally cited in the arrest report as the basis for Plaintiff's arrest.[14] (*Compare* Arrest Rep., ECF No. 41-6, *with* Crim. Compl., ECF No. 41-7.)

_____

[14] The Court notes that, under New York state law, criminal felony complaints are required to include an accusatory part that "designate[s] the offense or offenses charged" and a factual part. N.Y. Crim. Proc. Law § 100.15(1)–(2). More specifically, the criminal procedure law requires:

Notwithstanding the clear factual recitation in the criminal complaint, in their opening memorandum in support of summary judgment, the City argues that there was probable cause to arrest and charge Plaintiff for all of the guns found in the car on a constructive possession theory, without any detailed factual explication as to which charges related to which weapon and how the City adduced which charges were for which firearm (since there are no such factual allegations included in the criminal complaint). (*See* Mem. in Supp., ECF No. 43, at 11–14.) Problematically for the City's argument, the summary judgment record sheds no light on what facts *about the handguns* Officer Grant believed at the time the prosecution was initiated. Additionally, the City concedes that New York's automobile presumption does not provide a basis to presume Plaintiff's possession of the registered handguns found on the occupants of the Car. (*Id.* at 7 n.1.) In fact, application of the automobile presumption would suggest the opposite conclusion.[15]

---

The factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges. Where more than one offense is charged, the factual part should consist of a single factual account applicable to all the counts of the accusatory part.

*Id.*

[15] The Court notes that the automobile presumption is "purely permissive," and it "may be rebutted by . . . other evidence in the case." *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 393 (S.D.N.Y. 2016) (quotation marks omitted). In other words, "[c]ertain facts known to the police officer may be sufficient to rebut the presumption and therefore negate the existence of probable cause to prosecute." *Id.* The notion that "the application of the automobile presumption provides probable cause as a matter of law" despite the existence of potentially exculpatory facts "that may amount to a rebuttal is, in essence, a dangerous attempt to transform a permissive presumption into a mandatory one." *Id.* at 394. Here, in evaluating the City's argument regarding the handguns, the Court finds that it is arguable that a reasonable trier of fact could find the other evidence sufficient to undermine the existence of probable cause to arrest Plaintiff on the basis of the handguns because all of the handguns were registered to other persons and all of the handguns were found on other persons. (Defs.' 56.1, ECF No. 42, ¶¶ 12–13, 15.) Construing these facts in the light most favorable to the non-movant,

The present summary judgment record is also devoid of evidence as to whether the inclusion of the additional charges in the criminal complaint, as compared to the original arrest report, rested on decisions made by Defendant Officer Grant or by a Kings County prosecutor who, presumably, assisted in the drafting of the criminal complaint. It is well established that a malicious prosecution claim brought against police cannot stand if the decision to bring criminal charges was made by an intervening actor exercising independent judgment in the absence of pressure exerted by the police. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006) (collecting cases).

Due to questions as to how the summary judgment record illustrated what facts supported probable cause for the charges contained in the criminal complaint, the Court held the oral argument noted above, after which Defendants submitted supplemental briefing. (Defs.' Suppl. Ltr., ECF No. 50.) Their supplemental brief urges the Court to independently assess the totality of the record in order to determine whether probable

---

the facts known to the officers at the time prosecution was initiated, i.e., that the handguns were found on their registered owners, could defeat the theory of constructive possession notwithstanding the fact that, under a constructive possession theory, the ability to exercise control need not be exclusive. Put differently, while the automobile presumption *specifically excepts* circumstances in which a firearm is found upon the person of another, the common law theory of constructive possession *specifically accounts for* this circumstance by emphasizing that access to the area in which a firearm is found need not be exclusive. Ultimately, a determination as to whether it would have been reasonable for the officers to charge Plaintiff with a range of firearms offenses based on the handguns would be a highly fact-intensive inquiry under circumstances where the record suggests that the other men lawfully possessed the handguns that were recovered from their persons. Would it be reasonable for the officers to disregard the express carve-out anticipated by the automobile presumption and rely on constructive possession (and in the process, disregard the information that others claimed the lawful handguns as their own, which could negate probable cause as to Plaintiff)? Given the requirement that the Court draw all reasonable inferences in the non-movant's favor, had the officers in fact relied upon the handguns as the basis for Plaintiff's prosecution in his underlying case, the question of whether Defendants should be granted summary judgment would be a much closer call. The City's insistence on this argument is thus somewhat puzzling because it is both counterfactual and unavailing for purposes of seeking summary judgment.

26

cause existed — without regard to what was contemporaneously included in the criminal complaint as the underlying factual predication for the charges filed against Plaintiff in his state case. (*Id.* at 2–3.) Phrased another way, the City argues that the Court should evaluate the existence of probable cause objectively, without regard to the officers' subjective beliefs, positing that the Court need not "cabin" its analysis to the facts contained in the underlying criminal complaint. (*Id.* at 3.)

Taken to its logical conclusion, the City's argument invites the Court to *ignore* the underlying record of a § 1983 plaintiff's criminal prosecution and to substitute its judgment for the officers on the scene in order to determine whether an officer *could have formulated* probable cause that supported the criminal charges that were initiated. On summary judgment, however, such an approach risks drawing inferences in favor of the movants, which the Court cannot do.

Notwithstanding the Court's rejection of the City's argument that courts may simply disregard the charging instrument that formed the basis of a plaintiff's underlying prosecution and fashion its own theory of probable cause *de novo*, the Court recommends granting summary judgment on the malicious prosecution claim. This is because (1) Officer Grant had probable cause to arrest Plaintiff for criminal possession of a weapon in the second degree on the basis of the assault rifle, (2) there was no intervening change to the probable cause between arrest and the initiation of prosecution, and (3) there is no evidence from which to infer malice. Accordingly, no rational jury could find for Plaintiff on his malicious prosecution claims. Moreover, the Court finds that summary judgment is appropriate here on the basis of qualified immunity, as discussed below. The Court now turns to each element of Plaintiff's malicious prosecution claim.

a. Initiation of a Criminal Proceeding and Termination of the Proceeding in Plaintiff's Favor

As to the first element of malicious prosecution, the record is clear that a criminal proceeding was initiated against Plaintiff. (Crim. Compl., ECF No. 41-7.) As to the second element of malicious prosecution, the record is also clear that the proceeding was terminated in Plaintiff's favor when the parole violation charges were dismissed on October 19, 2017, and when all charges were ultimately dismissed on November 2, 2017. (Prelim. Hearing Tr., ECF No. 41-8, at 9:21–22; Certificate of Disposition, ECF No. 41-9.)

b. Probable Cause

In conducting a malicious prosecution analysis, as a general rule, courts must consider charges with different essential elements separately. *See Kee,* 12 F.4th at 166 (reiterating that probable cause "must be shown as to each crime charged in the underlying criminal action" and that "probable cause to prosecute should not be conflated with probable cause to arrest"); *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000); *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("[W]e should not allow a finding of probable cause on [a lesser charge] to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior."). In other words, the Court's inquiry does not end upon a finding of probable cause on one charge, particularly when there are other charges alleging more culpable behavior.[16] The guiding principle is that charges that arise out of distinct facts should be analyzed

---

[16] A related question is currently pending before the Supreme Court in *Chiaverini v. City of Napoleon*. On December 13, 2023, the Supreme Court granted the petition for certiorari to decide the following question: "Whether Fourth Amendment malicious prosecution claims are governed by the charge-specific rule, as the Second, Third, and Eleventh circuits hold, or by the 'any-crime' rule, as the Sixth Circuit holds." Petition for Writ of Certiorari, *Chiaverini v. City of Napoleon*, No. 23-50 (U.S. 2023); *23-50 Chaverini v. Napoleon, OH* (Dec. 13, 2023), https://www.supremecourt.gov/docket/docketfiles/html/qp/23-00050qp.pdf.

separately. *Posr*, 944 F.2d at 100. If this were not true, "an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges . . . knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses." *Id.*[17]

Here, Plaintiff was charged with 11 offenses — eight penal code violations and three parole violations. (Crim. Compl., ECF No. 41-7.) Specifically, under the New York Penal Law, Plaintiff was charged with two counts of criminal possession of a weapon in the second degree, in violation of Section 265.03(1)(b) and (3); three counts of criminal possession of a weapon in the third degree, in violation of Section 265.02(1), (7), and (8); one count of criminal possession of a firearm under Section 265.01-b(1); and two counts of criminal possession of a weapon in the fourth degree under Section 265.01(1) and (4).[18] (*Id.*) Under the N.Y.C. Administrative Code, Plaintiff was charged with possession

---

[17] This policy concern is another basis for the Court's rejection of Defendants' argument that the Court may substitute its judgment for the officers. As noted above, "[f]or purposes of malicious prosecution, probable cause is assessed in light of the facts known or reasonably believed by the officers at the initiation of the prosecution." *Keyes*, 2023 WL 176956, at *4 (citing *Rothstein*, 373 F.3d at 292). Where, as here, the summary judgment record clearly demonstrates the officers' reliance on one set of facts to support the charges included in a criminal complaint, concluding that an officer *could have* done something differently risks drawing inferences in favor of the non-movant with little basis in the record to find that the facts supporting the new charging theory were known or reasonably believed by the officers when the prosecution was initiated.

[18] Under New York law, the charges alleged in the criminal complaint included the following crimes: criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law Section 265.03 paragraphs (1)(b) (possession of a loaded firearm, with intent to use the same unlawfully against another) and (3) (possession of a loaded firearm); criminal possession of a weapon in the third degree, in violation of Section 265.02 paragraphs (1) (criminal possession of a weapon in the fourth degree, contrary to 265.01, by a person who has previously been convicted of a crime), (7) (possession of an assault weapon), and (8) (possession of a large capacity ammunition feeding device); criminal possession of a firearm, in violation of Section 265.01-b(1) (possession of "any firearm"); and criminal possession of a weapon in the fourth degree, in violation of Sections 265.01(1) (possession of any firearm) and 265.01(4) (possession of, *inter alia*, a rifle, shotgun, or antique firearm, and "has been convicted of a felony or serious offense"). N.Y. Penal Law §§ 265.01(1), (4); 265.01-b(1); 265.02(1), (7), (8); 265.03(1)(b),

of an unloaded rifle or shotgun pursuant to Section 10-131(H)(2); possession of rifle ammunition pursuant to Section 10-131(I)(5); and possession of an ammunition feeding device pursuant to Section 10-131(I)(6). (Crim. Compl., ECF No. 41-7.) As presently developed, the arguments on summary judgment raise two possibilities as to the underlying bases for these charges. First, Defendants' opening brief in support of summary judgment contends that five of the charges in the criminal complaint related to the handguns. (*See* Mem. in Supp., ECF No. 43, at 11; *see also* Defs.' Suppl. Ltr., ECF No. 50, at 2–3.) Second, all of these charges could be based on Plaintiff's alleged possession of the assault rifle given that all of the charges may be considered lesser and/or included offenses of the top two charges, which alleged alternative theories of criminal possession of a weapon in the second degree. (Defs.' Suppl. Ltr., ECF No. 50, at 4–5.)

     i.  *The Handguns Theory*

As discussed above, the record on summary judgment provides no support from which to conclude that Officer Grant was relying on the handguns as the factual basis for any of the charges in the criminal complaint. Notwithstanding that record, the City argues that the Court may find probable cause based on its interpretation of the facts known to the officers at the time of the stop. (Defs.' Suppl. Ltr., ECF No. 50, at 2–4.) The Court declines to do so. Indeed, to assume that the charges contained in the complaint pertain to the handguns would run contrary to the state law requirement that the

---

(3). Criminal possession of a weapon in the second degree is a Class C felony, punishable by up to 15 years of imprisonment. *Id.* §§ 70.00(2)(c), 265.03. Criminal possession of a weapon in the third degree is a Class D felony, punishable by up to seven years. *Id.* §§ 70.00(2)(d), 265.02. Criminal possession of a firearm is a Class E felony, punishable by up to four years. §§ 70.00(2)(e), 265.01-b. Criminal possession of a weapon in the fourth degree is a Class A misdemeanor, punishable by up to 364 days. *Id.* §§ 70.15(1), 265.01.

factual support for the charges be included in the criminal complaint, as discussed *supra* note 14. The City asserts, with little explanation as to which conduct allegedly provided the basis for the various charges, that "[t]here was probable cause to prosecute plaintiff for each of the charges that related to possession of the handguns," identifying five charges that they assert were based on those weapons, namely criminal possession of a weapon "in the fourth, third, and second degrees under N.Y. Penal L. §§ 265.01(1), 265.02(1), 265.03(1)(b), 265.03(3), and criminal possession of a firearm under N.Y. Penal L. § 265.01-b(1)." (Mem. in Supp., ECF No. 43, at 11–12.) The City further argues that these "charges all involve the same conduct, and thus plaintiff's malicious prosecution claim fails as to all of them." (*Id.* at 12.) The City then posits that Plaintiff constructively possessed the handguns, arguing that each of the handguns was loaded, and highlighting in particular that it would have been reasonable "for Officers Grant and Olsen to continue to prosecute plaintiff for CPW in the second degree based on his constructive possession of the handgun on Williams's waist and the statutory presumption that he intended to unlawfully use that weapon." (*Id.* at 12–13.) Perhaps so, if this were true. But the record does not support the conclusion that this is what actually happened.

The problem with the City's core arguments regarding the handguns, as discussed above, is that there are no factual allegations regarding the handguns reflected in the actual paperwork underlying Plaintiff's arrest and in the criminal complaint. Framed another way, there is no evidence in the record to establish that Officer Grant reasonably believed that the handguns, much less the handgun in Williams's waistband, provided factual support for the charges included in the criminal

31

complaint *at the time of the arrest and initiation of Plaintiff's prosecution*.[19] Defendants' brief mixes and matches facts, legal theories, and theories of probable case with little mention of the underlying arrest paperwork, court file, or the discovery in this case — all at the risk of reinventing the actual events that surrounded Plaintiff's arrest and the initiation of the prosecution against him. However, in evaluating a malicious prosecution claim on summary judgment, a post-hoc analysis of alternative factual probable cause theories could result in the Court drawing impermissible factual inferences in favor of the non-movant, rather than assessing probable cause "in light of the facts known or reasonably believed by the officers at the initiation of the prosecution." *Keyes*, 2023 WL 176956, at *4.[20]

In evaluating the constitutionality of an officer's actions in the context of a Fourth Amendment malicious prosecution analysis, the Court must consider what actually happened and what the officers knew or reasonably believed at the time, not what

---

[19] Although the relevant inquiry of course must focus on the officer's state of mind, the Court further notes that there was not one question in Plaintiff's written deposition questions during discovery in this case regarding the handguns; Plaintiff only asked about the assault rifle — again suggesting that Plaintiff himself understood that his underlying arrest and prosecution here were based solely on the assault rifle. (*See* Defs.' Responses to Pl.'s Written Disposition [sic] to Defendants, ECF No. 41-4; *see id.* at 9–10 ("Question No. 17: P.O. Teriq C. Grant[,] did you know the assault rifle did not belong to the plaintiff before you charged him with C.P.W.?", in response to which Defendant Grant stated that "prior to arresting plaintiff and listing criminal possession of a weapon in the second degree, in violation of N.Y. P.L. § 265.03(1)(b), as a charge on plaintiff's arrest report, Detective Grant did not know whether, or to whom, the assault rifle found in the trunk of the Subject Vehicle on October 1, 2017, was registered."); *see also id.* at 10–11 ("Question No. 20: Why did you charge plaintiff with having a weapon?", in response to which Defendant Grant stated that, "limiting this response to plaintiff's arrest on October 1, 2017, . . . an assault rifle was recovered from the trunk of the Subject Vehicle in which plaintiff was a passenger.").)

[20] Ultimately, these flaws in the City's arguments, although concerning, do not counsel against granting summary judgment because the Court finds that there is no material factual dispute as to the existence of probable cause to charge Plaintiff with all of the charges in the criminal complaint on the basis of the assault rifle and because Defendants are entitled to qualified immunity, as discussed *infra*.

might have been. Here, the record does not support the conclusion that the handguns were the basis for Plaintiff's prosecution. Accordingly, the Court does not find that Defendant Grant is entitled to summary judgment as to this claim on the theory that the handguns *could have* provided probable cause to prosecute.[21]

> ## ii.   *The Assault Rifle Theory*

The Court now turns to the question of whether there is a genuine dispute regarding whether probable cause existed for the charges included in the actual arrest

---

[21] In its opening brief, the City argued that there was probable cause to prosecute Plaintiff for each of four charges that they asserted relate to possession of the assault rifle: criminal possession of a weapon in the fourth and third degrees under N.Y. Penal Law Sections 265.01(4), 265.02(7)–(8), and criminal possession of a firearm under Section 265.01-b(1). (Mem. in Supp., ECF No. 43, at 14.) Even assuming *arguendo* that there was a basis in the record from which to conclude that the other charges stemmed from the handguns, the issue of whether movants would be entitled to judgment as a matter of law on the handgun theory would be complex given the inherent tension between the doctrine of constructive possession and the automobile presumption. Considering this tension, it would be unclear whether "the record taken as a whole could not lead a rational trier of fact to find for the nonmovant." *Borley*, 22 F.4th at 78 (quotation marks omitted). More concretely, under a theory of constructive possession, an individual may be found to possess a firearm if there is proof that they "exercised 'dominion or control over the [firearm] by a sufficient level of control over the *area* in which the [firearm] is found," even if such control is not exclusive. *McCoy*, 95 N.Y.S.3d at 445 (emphasis added); *see also Bryant*, 161 N.Y.S.3d at 405. In other words, an individual may be found to constructively possess a firearm even if the firearm is found on the body of another person and is registered to that individual. In direct contrast, under the automobile presumption, the "'presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile'" *unless* the firearm "is found upon the person of one of the occupants therein." *Shabazz*, 201 F. Supp. 3d at 393 (quoting N.Y. Penal Law § 265.15(3)).

Here, the City is essentially advancing the argument that, when a weapon is found in a car, it is lawful for the officers to arrest everyone in the vehicle regardless of whether the weapon is registered or found upon the person of another occupant of the vehicle (and notwithstanding the automobile presumption's express carve-out for a presumption of possession when a firearm is found under these circumstances). Whether the other passengers' apparently lawful possession of the weapons under such circumstances negates probable cause could be a question of fact for a jury, given the inherent tension between the permissible inferences that may be drawn under the doctrine of constructive possession and the automobile presumption, which is rebuttable, as discussed *supra* note 15. However, this issue need not be resolved in this case because the revelation of the assault rifle provided probable cause for all of the charges alleged in the criminal complaint and the Court's conclusion that Defendants are entitled to qualified immunity.

paperwork and criminal complaint based on the factual allegations contained therein, namely, all of the charges in the criminal complaint, predicated on Plaintiff's alleged possession of the assault rifle. Indisputably, these charges all involve the same conduct.

As discussed above, Plaintiff has not demonstrated a genuine dispute as to whether any of the exceptions to the automobile presumption apply such that Defendants could not presume possession of the assault rifle in determining probable cause. In response to Defendants' arguments on summary judgment regarding the malicious prosecution claim, Plaintiff asserts that there was no probable cause because he "was not found to be in possession of the [r]ifle," it was "legally registered to [Anthony]," Anthony "took responsibility for the [a]ssault [r]ifle," and Plaintiff "[d]id not know whether or to whom the [a]ssault [r]ifle found in the trunk was [r]egistered." (Mem. in Opp'n, ECF No. 44, at 7–8.) These facts do not defeat the existence of probable cause, however, and, as noted *supra*, it is undisputed that Plaintiff has been convicted of a felony. (Crim. Rec., ECF No. 41-2, at 6–7; Pl.'s 56.1, ECF No. 48, ¶ 1.)

The counts of criminal possession of a weapon in the second degree, charged in violation of New York Penal Law Sections 265.03(1)(b) and 265.03(3), were the most serious charges alleged against Plaintiff. Both of these charges are predicated on probable cause that Plaintiff possessed a loaded firearm, which under New York law, is defined as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm." N.Y. Penal Law § 265.00(15). On the basis of this definition, New York courts have affirmed convictions for criminal possession of a loaded weapon in the second degree on similar facts to those present in this case. For example, in *People v. Watts*, as part of a vehicle search, the officers recovered a loaded Sig Sauer 9 millimeter magazine from a duffel bag in the backseat of the car, as well as a Sig Sauer

handgun from under the front passenger seat. 187 N.Y.S.3d 848, 852 (App. Div. 3d Dep't 2023). Considering the automobile presumption, constructive possession, and the definition of "loaded firearm" under New York Law, the Third Department concluded that the jury's verdict of guilty was supported by the evidence. *Id.* at 851–53; *see also People v. Colter*, 170 N.Y.S.3d 665, 670 (App. Div. 3d Dep't 2022).

In this case, there is no dispute that the Stag Arms assault rifle, which had the ability to accept a detachable magazine, and a magazine cartridge containing 12 bullets were recovered from the trunk. (Defs.' 56.1, ECF No. 42, ¶ 21; Pl.'s 56.1, ECF No. 48, ¶ 20.) Accordingly, under New York's definition of "loaded firearm," there was probable cause to charge Plaintiff with criminal possession of a weapon in the second degree on the basis of the assault rifle and the accompanying loaded magazine under Section 265.03(3). (*See* Mem. in Supp., ECF No. 43, at 14 (arguing that there was a basis to conclude, under the automobile presumption, that Plaintiff possessed "not only the assault weapon but also the magazine cartridge").) As to the additional criminal possession of a weapon in the second degree theory, possession of a loaded firearm, with intent to use the same against another, in violation of § 265.03(1)(b), New York law expressly presumes "intent to use the same unlawfully against another" when an individual possesses a weapon. N.Y. Penal Law § 265.15(4). In light of this presumption, there was probable cause to include this charge in Plaintiff's criminal complaint.

Similarly, probable cause supported the remaining charges included in the criminal complaint. As set forth above, the criminal complaint included three theories of criminal possession of a weapon in the third degree. (Crim. Compl., ECF No. 41-7.) Under New York law, a person commits criminal possession of a weapon in the third degree under Section 265.02(1) when they commit criminal possession of a weapon in the fourth degree, after having been convicted of a crime. Section 265.02(7) is violated

when a person possesses an assault weapon, and Section 265.02(8) may be charged when an individual possesses "a large capacity ammunition feeding device." As discussed above, the Stag Arms assault rifle could accept a detachable magazine. (Mem. in Supp., ECF No. 43, at 14.) New York law defines "assault weapon" as including various semiautomatic rifles and a "large capacity feeding device" as, *inter alia*, a magazine that can accept more than ten rounds of ammunition. N.Y. Penal Law § 265.00(23). Accordingly, the recovery of an assault rifle and magazine containing 12 bullets, under the circumstances here, and in light of Plaintiff's prior conviction, provided probable cause for all three theories of criminal possession of a weapon in the third degree.

As to the remaining three charges, they are all lesser-included offenses. Specifically, criminal possession of a firearm under Section 265.01-b(1), a Class E felony, prohibits possession of a firearm. And as to the Class A misdemeanor charges, under New York law, a person commits criminal possession of a weapon in the fourth degree when he or she possesses any firearm, N.Y. Penal Law § 265.01(1), or "possesses a rifle . . . and has been convicted of a felony or serious offense," N.Y. Penal Law § 265.01(4). Again, Defendants argue that "under the automobile presumption, [P]laintiff possessed the assault rifle in the trunk." (Mem. in Supp., ECF No. 43, at 14.)

Given the overlapping elements for the lesser-included offenses that were charged in the criminal complaint (and notwithstanding the somewhat multiplicitous nature of the charges), the Court finds that there was probable cause to include the full panoply of weapons charges in the criminal court complaint on the basis of the officers' discovery of the assault rifle and magazine in the trunk.

36

iii.    *The Three Charges Pertaining to the Parole Violations*

Defendants lastly argue that there was probable cause to charge Plaintiff with parole violations for possession of an unloaded rifle or shotgun pursuant to N.Y.C. Admin. Code Section 10-131(H)(2), possession of rifle ammunition pursuant to Section 10-131(I)(5), and possession of an ammunition feeding device pursuant to Section 10-131(I)(6). Once again, all of these charges involved the same conduct: alleged possession of the assault rifle.

As stated above, it is undisputed that Plaintiff was previously convicted of attempted criminal possession in the third degree and was on parole at the time of his arrest on October 1, 2017. (Crim. Rec., ECF No. 41-2.) Defendants argue that, "in tandem with [P]laintiff's possession of the assault rifle and magazine cartridge containing 12 bullets under the automobile presumption," Plaintiff's status as a person on parole at the time of his October 1, 2017 arrest "gave rise to probable cause for his parole violation charges." (Mem. in Supp., ECF No. 43, at 15.) In response, Plaintiff points to inconsistencies between the parole violation charges listed in the complaint and those listed in his release report and argues that "Grant testified Plaintiff had nothing when he was searched." (Mem. in Opp'n, ECF No. 44, at 9.) This does not identify a material fact in dispute. For the reasons described above as to the criminal charges, the Court finds that there was probable cause for Plaintiff's prosecution on the parole violation charges.

iv.    *Dissipation of Probable Cause*

Defendants had probable cause to arrest Plaintiff on the basis of the assault rifle. Defendants further argue that Plaintiff "cannot show that probable cause dissipated between his arrest and prosecution." (Mem. in Supp., ECF No. 43, at 16.) As explained above, "the distinction between probable cause to arrest and to prosecute only assumes

37

importance when new information comes to light in the hours or days between the arrest and prosecution." *Williams v. City of New York*, No. 10-CV-9594 (CM) (DCF), 2012 WL 547508, at *7 (S.D.N.Y. Feb. 17, 2012). In other words,

> although probable cause to arrest is not necessarily determinative of the existence of probable cause to prosecute[,] . . . [w]here there is no change in the information known to police at the time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for malicious prosecution.

*Cortes v. City of New York*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (citing *Posr v. Ct. Off. Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999); *Williams*, 2012 WL 547508, at *7).

In response, Plaintiff argues in relevant part that "it was not [r]easonable for Defendants to believe there was probable cause to prosecute Plaintiff" because Plaintiff informed them "that they were violating his constitutional [r]ights and civil [r]ights at the time of arrest and also while at the precinct." (Mem. in Opp'n, ECF No. 44, at 10.) As a result, Plaintiff contends that "the (alleged) probable cause that existed for the stop [d]id [d]issipate between Plaintiff['s] arrest and prosecution." (*Id.*) However, as set forth above, there is no material fact in dispute as to the fact that the assault rifle and magazine were recovered from the vehicle and that Plaintiff himself acknowledges Anthony informed Officer Grant at the time of the stop that the assault rifle was registered to Anthony. (Pl.'s 56.1, ECF No. 48, ¶ 20.)

The factual record and Plaintiff's arguments do not demonstrate "'the discovery of some intervening fact'" that would dissipate probable cause between the time of Plaintiff's arrest and when the criminal complaint was filed. *See Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). Informing Defendants that they were violating Plaintiff's constitutional rights does not constitute an intervening fact unknown at the time of arrest; rather, it is a conclusory allegation unsupported by any new information. And it is undisputed that

the officers knew at the time of the car stop that Anthony claimed that the rifle belonged to him and was registered.

Defendants further note that "'[w]here an allegation of misconduct is directed at the police, a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police.'" (Mem. in Supp., ECF No. 43, at 16 (quoting *Roberts v. City of New York*, No. 16-CV-5409 (BMC), 2017 WL 4357291, at *9 (E.D.N.Y. Sept. 29, 2017)).) Additionally, as noted above, "there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding" which can be rebutted "when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Brome v. City of New York*, No. 2-CV-7184 (WHP), 2004 WL 502645, at *5 (S.D.N.Y. 2004) (quotation marks omitted). In light of this, Defendants allege that because Defendant Grant "accurately relayed the relevant facts to the Kings County District Attorney's Office, which continued [P]laintiff's prosecution until November 2, 2017," the prosecutor exercised independent judgment in deciding to continue the criminal proceeding. (Mem. in Supp., ECF No. 43, at 16.)[22] In this case, the Court finds that there was no material change in the information on which Officer Grant relied from the night of Plaintiff's arrest through the ultimate termination of the prosecution.

*    *    *    *    *

---

[22] As discussed below, Plaintiff alleged that Defendants knowingly provided false information to the Kings County District Attorney's Office, a conclusory statement unsupported by the record. (*See* Mem. in Opp'n, ECF No. 44, at 11.)

Having found that there was probable cause to charge Plaintiff with all of the counts included in the criminal complaint on the basis of the assault rifle alone, and that the probable cause did not dissipate between arrest and prosecution, the Court concludes that Plaintiff cannot make out a malicious prosecution claim because the "existence of probable cause is a complete defense to a malicious prosecution claim." *Cornelio v. Connecticut*, 32 F.4th 160, 178–79 (2d Cir. 2022).

       c.  <u>Actual Malice</u>[23]

Plaintiff has not adduced any evidence of the fourth element of malicious prosecution — actual malice as a motivation for Defendants' actions. In their opening brief, Defendants argue that Plaintiff has failed to demonstrate actual malice. (Mem. in Supp., ECF No. 43, at 24.) Defendants point to the fact that "Officer Grant's testimony shows the opposite [of malice]: he accurately stated the facts yet reasonably believed there was probable cause to prosecute [P]laintiff" when he "testified under oath that other passengers took responsibility for all of the guns, while [P]laintiff took responsibility for none." (Mem. in Supp., ECF No. 43, at 15.) Defendants further state that the information pertaining to "which passenger took responsibility for which weapon was included in the Complaint Room Screening Sheet, dated the day after [P]laintiff's arrest." (*Id.*)

In response, Plaintiff argues that Defendant Grant "knowingly, willingly, and maliciously charged Plaintiff"; that Defendants "knowingly, willingly, and maliciously provided false facts to Plaintiff['s] Parole Officer and to the Kings County District Attorney['s] Office"; and that "there is [r]eason to believe the stop was [r]acially

---

[23] Notwithstanding the Court's finding that there was probable cause to arrest and prosecute Plaintiff, the Court nevertheless analyzes all elements of malicious prosecution.

motivated," that the passengers were discriminated on the basis of their race, and that they were racially profiled. (Mem. in Opp'n, ECF No. 44, at 10–11.)

The record is devoid of support for these conclusory allegations. As discussed above, notwithstanding the City's unsupported arguments about the handguns, the criminal court record is very clear that Officer Grant's basis for Plaintiff's arrest was the rifle, as detailed in the arrest report, the criminal complaint, and Officer Grant's testimony. Although one might wonder if Plaintiff was overcharged due to the number of counts included in his criminal complaint, that is often the nature of lesser-included offenses under New York's gun laws. Moreover, inclusion of the top counts was supported by probable cause and there is no evidence in the record from which to infer that Plaintiff suffered any additional constitutional harm due to the sheer number of charges given that all of the charges were dismissed at the same time. In short, Plaintiff has not shown any evidence suggesting that Officer Grant acted with motives "other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (quotation marks omitted). Accordingly, Plaintiff has not demonstrated a genuine dispute of fact for trial as to the existence of actual malice. *See Theobald v. City of New York*, 406 F. Supp. 3d 270, 275 (E.D.N.Y. 2019) ("[T]o survive summary judgment, a non-movant must present concrete evidence and may not rely on mere conclusory or speculative claims or denials" (quotation marks omitted)); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial." (quotation marks omitted)); *Celotex*, 477 U.S. at 322 (holding that the entry of summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial").[24]

*    *    *    *    *

For all of these reasons, the Court respectfully recommends that Defendants'

summary judgment motion be granted in full as to the malicious prosecution claims.

## C.  Qualified Immunity

Lastly, Defendants argue that they are entitled to qualified immunity on both the

false arrest and malicious prosecution claims. Specifically, Defendants argue that they

are entitled to qualified immunity because "the law was not clearly established that it

would violate [P]laintiff's constitutional rights to arrest him for possession of the

handguns and assault rifle in the trunk," and, "at an absolute minimum, arguable

probable cause supported [P]laintiff's arrest and prosecution." (Mem. in Supp., ECF No.

43, at 17.)

"Qualified immunity shields government officials performing discretionary

functions 'from liability for damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known.'" *Greene v. Napoli*, No. 11-CV-0792 (NAM) (DEP), 2012 WL 4107595, at *6

(N.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, 2012 WL 4107722 (N.D.N.Y.

Sept. 19, 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This circuit finds a

---

[24] In addition, the Court notes that "it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (holding that the district court did not err in disregarding allegations *pro se* Plaintiff-Appellant raised for the first time in response to Defendant-Appellee's motion for summary judgment). Notwithstanding his *pro se* status, because Plaintiff did not initially allege a violation of his right to equal protection nor a claim that Defendants fabricated evidence, Plaintiff may not raise these allegations in opposing Defendants' motion for summary judgment. (*See generally* Compl., ECF No. 1.)

right clearly established when "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Wiggins v. Griffin*, 86 F.4th 987, 994 (2d Cir. 2023) (quotation marks omitted). If Defendants "reasonably believed that [their] actions did not violate [P]laintiff's rights, [they are] entitled to qualified immunity even if that belief was mistaken." *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002). Defendants are therefore "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quotation marks omitted).

To assess qualified immunity, courts inquire as to (1) whether "the facts alleged show the officer's conduct violated a constitutional right" and (2) whether the violated right "was clearly established." *Pearson*, 555 U.S. at 232 (quotation marks omitted). Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236; *see also Sanchez v. Nassau County*, 662 F. Supp. 3d 404–06 (E.D.N.Y. 2023) (citing *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020) (analyzing the existence of a genuine factual dispute before turning to qualified immunity)); *Richardson v. McMahon*, No. 22-582, 2023 WL 3102910, at *1 (2d Cir. Apr. 27, 2023).

For all of the reasons discussed above, "[t]aken in the light most favorable to the party asserting the injury," the facts alleged here do not "show the officer[s'] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. First, "a police officer is entitled to qualified immunity on a false arrest claim 'if there was at least arguable probable

cause at the time the officer arrested the plaintiff.'" *Marsh v. City of New York*, No. 18-CV-1883 (HG) (RER), 2022 WL 3576712, at *3 (E.D.N.Y. Aug. 19. 2022) (quoting *Mitchell v. City of New York*, 749 F. App'x 75, 77 (2d Cir. 2019). As established *supra*, Defendants had probable cause to arrest Plaintiff. Because the facts here do not support a finding that there was a violation of a constitutional right, the Court respectfully recommends finding that Defendants are entitled to qualified immunity on Plaintiff's false arrest claim.

Second, as discussed above, a finding of probable cause "is a complete defense to a malicious prosecution claim." *Cornelio*, 32 F.4th at 178–79. Here, Defendants had probable cause to arrest Plaintiff and he has not identified any material facts to show that probable cause dissipated between arrest and prosecution. The Court thus finds that "a reasonably competent police officer in either Defendant's position could have reasonably believed that there was probable cause to prosecute Plaintiff." *Marsh*, 2022 WL 3576712, at *7. Accordingly, the Court also recommends finding that Defendants are entitled to qualified immunity on Plaintiff's malicious prosecution claims.

## CONCLUSION

For all the reasons discussed herein, the Court respectfully recommends that Defendants' motion for summary judgment (ECF No. 39) be granted.

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically and a copy sent by mail to Plaintiff. As a courtesy, the Court also respectfully directs Defendants to provide a copy of this report and recommendation to Plaintiff forthwith and to file proof of same by **February 5, 2024.** Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections

within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
      January 31, 2024

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

45